```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

| | |
|---|---|
| **ALFREDO TERAN, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.       ) | No. 22-cv-02338-JTF-tmp |
| ) | |
| **LAWN ENFORCEMENT, INC., et al.,** ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING PLAINTIFFS' MOTION TO COMPEL AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SANCTIONS**

Before the court are the plaintiffs' Motion to Compel filed on March 11, 2024, and Motion for Sanctions filed on May 21, 2024. (ECF Nos. 62, 67.) The defendants filed a response to the Motion to Compel on May 24, 2024 (ECF No. 68), and a response to the Motion for Sanctions on June 10, 2024. (ECF No. 75.) An evidentiary hearing was held on July 10, 2024, where the parties offered evidence and argument. (ECF No. 97.) For the reasons below, the Motion to Compel is DENIED, and the Motion for Sanctions is GRANTED in part and DENIED in part.

### I. BACKGROUND

On June 1, 2022, the plaintiffs filed a complaint under the Fair Labor Standards Act individually and on behalf of other similarly situated employees at Lawn Enforcement, Inc. ("Lawn Enforcement"). (ECF No. 7 at PageID 25.) The plaintiffs allege

that the defendants engaged in a scheme to not pay their employees the appropriate overtime compensation. Specifically, the plaintiffs claim that the defendants paid the plaintiffs with a paycheck for their first forty hours and a relatively small amount of overtime, typically not exceeding one to two hours. (ECF No. 67 at PageID 318.) For any additional overtime hours worked, the defendants allegedly paid the plaintiffs cash at their regular hourly rate rather than at the overtime rate. (Id.) On June 8, 2022, plaintiffs' counsel sent a demand letter to the defendants with a settlement offer and a request that the defendants "immediately place a 'litigation hold' on any documents or evidence, which might be evidence in subsequent litigation of their complaints and claims." (ECF No. 67-4 at PageID 471.) The litigation hold included "emails, letters, correspondence, notes, payroll records, calendars, diaries, journals, policy manuals, text messages, or other materials and evidence related to or which might reasonably lead to the discovery of admissible evidence in this case." (Id.)

On October 6, 2022, the plaintiffs served interrogatories and requests for production on the defendants. (ECF No. 22.) Among other things, the plaintiffs requested information and documents related to the defendants' method of timekeeping and corresponding records. (ECF Nos. 62-1 at PageID 261-63 (Responses to Interrogatories); 62-2 at PageID 265-67 (Responses to Requests for

Production).) The specific issues presented in this motion relate to the discovery requests regarding the time clock and timecards. Interrogatory No. 8 requested the following:

> Describe in detail Defendants' policies and standard operating procedures related to timekeeping or the recording of hourly employees', including Plaintiffs', hours worked. This includes, but is not limited to, a description of Defendants' policies and standard operating procedures identifying (i) the party responsible for recording hourly employees' time (i.e. employees recorded their own time); (ii) the means or method used to make such time-records (i.e. sign-in sheet, time clock, etc.); (iii) the timing of such records (i.e. time was recorded at the start and finish of employees workday); as well as (iii) when or how frequently Defendants' reviewed these records. If there were any changes in Defendants' policies or standard operating procedures related to the recording of hourly employee's hours worked, please describe the change implemented, state the reason for the change, identify who made the decision to make the change, and list the dates decision to change was made as well as the date the change took effect.

(ECF No. 62-1 at PageID 260-61.) Similarly, Interrogatory No. 9 stated as follows:

> Produce any records kept by Defendants that show or relate to the dates, hours, or time worked by Plaintiffs from June 1, 2019 to present. This includes but is not limited to timecards, time sheets, customer records, work schedules, GPS records, and/or virtual records. This includes all records from which information concerning dates and hours Plaintiffs worked may be obtained, even if that record was/is used for a purpose other than keeping time.

(Id. at PageID 261.) The plaintiffs also requested documents related to time recordkeeping. Request for Production No. 7 stated as follows:

- 3 -

> Produce any records kept by Defendants that show or relate to the dates, hours, or time worked by Plaintiffs from June 1, 2019 to present. This includes but is not limited to timecards, time sheets, customer records, work schedules, GPS records, and/or virtual records. This includes all records from which information concerning dates and hours Plaintiffs worked may be obtained, even if that record was/is used for a purpose other than keeping time.

(ECF No. 62-2 at PageID 265.)

In their December 27, 2022 response to the plaintiffs' interrogatories and December 29, 2022 response to the plaintiffs' requests for production, the defendants did not produce timecards, but identified and produced payroll timesheets that listed the employees' hours worked and wages paid and payroll schedules that summarized the information contained on the timesheets. (ECF Nos. 62-1 at PageID 261; 62-2 at PageID 265; 67-2 at PageID 327–465 (Payroll Schedules and Payroll Timesheets).) These documents consistently indicated that the plaintiffs always worked forty-one hours or less. However, at the evidentiary hearing, the plaintiffs produced one photograph of a physical time card that showed that there were some weeks with overtime hours that were not reflected in the produced payroll schedules or timesheets, and Ricardo Teran further testified to that effect. (See Ex. No. 1 (Time Card for Ricardo Teran), Ex. No. 2 (Payroll Timesheet for Pay Period Ending on October 20, 2019).) Specifically, the time card presented at the evidentiary hearing showed that there was at least one week where Ricardo Teran worked forty nine hours and

forty three minutes. (Ex. No. 1.) However, there is no week on the payroll schedule or timesheet that showed that Ricardo Teran worked over nine and a half hours of overtime. (See ECF No. 67-2 at PageID 348–351, 355–463.) Ricardo Teran further testified that he had been there since 2015 and it was defendants' practice to pay any overtime not listed in cash at the regular rate.

On April 3, 2023, the plaintiffs provided a notice of deficiency and asked for supplementation on a number of interrogatories, including Interrogatory No. 8. (ECF No. 62-3 at PageID 270 (April 3, 2023 Deficiency Letter).) In their supplemental response on May 18, 2023, the defendants answered Interrogatory No. 8, writing that "employees of Lawn Enforcement, Inc. kept track of their time on a daily basis and turned in their time to Lawn Enforcement, Inc. on a weekly basis during the statutory period." (ECF No. 62-5 at PageID 277.) On February 14, 2024, the plaintiffs emailed a second notice of deficiency, requesting that the defendants supplement their previous responses with additional information and records related to the plaintiffs' timecards. (ECF No. 62-6 at PageID 280-81 (February 14, 2024 Deficiency Notice).) The defendants supplemented discovery responses on March 1, 2024, but the plaintiffs claim the supplementation included documents related only to the new opt-in plaintiffs and did not include information about the timecards or the actual timecards themselves. (ECF No. 62-10 at PageID 291

- 5 -

(March 1, 2024 Email Correspondence).) On March 11, 2024, the plaintiffs filed their motion to compel production of the timecards. (ECF No. 62.)

On March 14, 2024, the plaintiffs deposed Lawn Enforcement co-owner Braden Jason Walker. During the deposition, when asked how employees kept track of their time, Walker answered: "[t]hrough a timecard and a clock." (ECF NO. 67-3 at PageID 466.) He testified that employees "would put the timecard back in, and Trinidad would collect them. And he would bring them with the paperwork or he would set them in an office or a designated spot." (Id. at PageID 467.) When asked if there was a way for an employee to access the information and verify the hours worked, Walker testified that "[w]e would keep the timecards for sometimes two weeks, sometimes two months. Just depends. They'd stack up in the office, and, eventually, I'd throw them away." (Id.) When asked how long he would keep the timecards, he testified that it "[d]epends on how many there were. When they started stacking up and falling over, we'd throw them away . . . Sometimes we'd — I mean, we'd always give them at least a couple of weeks in case there was a question about the hours that they worked." (Id. at PageID 468.) Finally, he testified that he no longer had the timecards relevant to this lawsuit. (Id.)  According to Jamie Walker, one of the defendants, the decision to discard the timecards in the regular course of business was made based on Lawn Enforcement's bookkeeper, John

Turner, and the decision to continue this practice was made based on the advice of Lawn Enforcement's CPA, Hunter L. McGraw, after his firm was retained during the first quarter of 2022. (ECF No. 75-1 at PageID 510.) The defendants claim that, on the advice of their bookkeeper, they created the payroll schedules and payroll timesheets contemporaneously, which captured all of the information on the timecards. (Id.) After learning that the defendants had disposed of and continue to dispose of the physical timecards, the plaintiffs filed a motion for sanctions for spoliation of evidence.

## II.  ANALYSIS

### A.  Motion to Compel

The plaintiffs filed a motion to compel the production of the timecards. (ECF No. 62.) The defendants responded by stating that they could not produce the timecards because they were thrown out. (ECF No. 68 at PageID 497.) Courts cannot "compel [a] party to produce documents that do not exist or are not in his possession, custody or control." Waskul v. Washtenaw Cnty. Cmty. Mental Health, 569 F. Supp. 3d 626, 639 (E.D. Mich. 2021). Because the defendants admit that the time cards were disposed of, thus making production impossible, the plaintiffs' Motion to Compel is DENIED.

### B.  Motion for Sanctions

The second motion before the undersigned is the plaintiffs' motion for sanctions based on alleged spoliation of evidence. The

plaintiffs request sanctions for the disposal of timecards both before and after the litigation began. For the reasons explained below, the undersigned finds that sanctions are not supported for the disposal of the timecards prior to lawsuit, but sanctions are warranted for the continued disposal of the timecards after the defendants were put on notice of the litigation.

1. Legal Standard

"The authority to impose sanctions for spoliated evidence arises from a 'court's inherent power to control the judicial process.'" Ecolab Inc. v. Ridley, No. 1:22-cv-50, 2023 WL 11762828, at *10 (E.D. Tenn. Aug. 1, 2023) (quoting Adkins v. Wolever, 554 F.3d 650, 652 (6th Cir. 2009) (en banc)). "Spoliation is 'the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction.'" Capital Senior Living, Inc. v. Barnhiser, No. 3:22-CV-00606, 2024 WL 278105, at *3 (N.D. Ohio Jan. 25, 2024) (quoting Nationwide Mut. Fire Ins. Co. v. Ford Motor Co., 174 F.3d 801, 804 (6th Cir. 1999)). "[A] proper spoliation sanction should serve both fairness and punitive functions." Id. (quoting Adkins, 554 F.3d at 653). "The severity of sanctions issued is determined on a case-by-case basis, depending in part on the spoliating party's level of culpability." Id. (quoting Flagg v. City of Detroit, 715 F.3d 165, 178 (6th Cir. 2013)).

A party seeking sanctions for spoliation of evidence must establish the following: "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the party destroyed the evidence with a culpable state of mind; and (3) the destroyed evidence was relevant to the opposing party's claim or defense." Ecolab, Inc., 2023 WL 11762828, at *10 (quoting McCarty v. Covol Fuels No. 2, LLC, 664 F. App'x 372, 378 (6th Cir. 2016) and Byrd v. Alpha All. Corp., 518 F. App'x 380, 383–84 (6th Cir. 2013)).

"For purposes of spoliation motions, courts deem evidence to be 'under a party's control when that party has the right, authority, or practical ability to obtain the [evidence][.]" Capital Senior Living, 2024 WL 278105, at *3 (quoting Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 515 (D. Md. 2009)). "A party to civil litigation has a 'duty to preserve relevant information . . . when that party has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp., No. 3:16-CV-00024-CHB, 2022 WL 3094320, at *5 (W.D. Ky. July 18, 2022) (quoting John B. v. Goetz, 531 F.3d 448, 459 (6th Cir. 2008) (internal quotation marks omitted)). "To prove culpability, the party claiming spoliation must show 'the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.'" Id.

- 9 -

(quoting Beaven v. U.S. Dep't of Just., 622 F.3d 540, 554 (6th Cir. 2010)). "In determining whether a party should have known that evidence may be relevant to future litigation, courts apply an objective, not subjective, standard." Ecolab Inc., 2023 WL 11762828, at *10 (citing Byrd, 518 F. App'x at 384). "Because the intentional or negligent destruction of relevant evidence necessarily hinders the jury's ability to decide a case based on a full understanding of the facts, a proper spoliation sanction 'will serve both fairness and punitive functions' by 'leveling the evidentiary playing field' and deterring other litigants from engaging in similar conduct." Tolson v. Washburn, No. 3:19-cv-00175, 2022 WL 1479942, at *5 (M.D. Tenn May 10, 2022) (quoting Adkins, 554 F.3d at 652).

### 2. Timecards Destroyed Before Litigation Began

The plaintiffs argue that sanctions are appropriate for timecards that were destroyed before the defendants had notice of the lawsuit. The plaintiffs refer to Section 11(c) of the FLSA and relevant regulations, which outline the recordkeeping requirements imposed on employers. The plaintiffs argue that these recordkeeping obligations satisfy the first prong of the spoliation analysis because the defendants were required to maintain, among other things, the following:

. . .

>     (7)  Hours worked each workday and total hours worked
>          each workweek (for purposes of this section, a
>          "workday" is any fixed period of 24 consecutive
>          hours and a "workweek" is any fixed and regularly
>          recurring period of 7 consecutive workdays),
>
>     (8)  Total daily or weekly straight-time earnings or
>          wages due for hours worked during the workday or
>          workweek, exclusive of premium overtime
>          compensation . . . .

29 C.F.R. § 516.2(a)(7)–(8). The plaintiffs point out that the regulations require employers to maintain those records for a period of two years. See 29 C.F.R. § 516.6(a). The plaintiffs also argue that the defendants were required to maintain the original records, based on the following language in the regulations: "From the date of last entry, all basic time and earning cards or sheets on which are entered the daily starting and stopping time of individual employees . . . ." Id. § 516.2(a)(1). The defendants argue that they had no duty to preserve the timecards at the time they were discarded because they did not have notice of pending litigation. (ECF No. 75 at PageID 507.)

After the hearing, both parties submitted "Notices of Pertinent Case Law," specifically addressing whether violating recordkeeping regulations can be a basis for imposing sanctions even when the disposal occurred prior to having notice of potential or pending litigation. (ECF Nos. 96, 99.) Both parties acknowledge that the Sixth Circuit has not specifically addressed this issue, but recognize that a number of other circuits have held that the

failure to preserve records in violation of a regulation can give rise to an inference of spoliation, even if the litigation is not foreseeable at the time the records are made. (ECF Nos. 96-1 at PageID 1725; 99-1 at PageID 1752.)

The parties cite to several unpublished district court cases in the Sixth Circuit to support their respective positions. Both parties reference the following excerpt from Johnson v. Metropolitan Government of Nashville:

> While it does not appear that the Sixth Circuit has addressed this precise question, several courts, including the Seventh Circuit that decided *Rummery,* have held that the failure to preserve evidence in violation of a regulation requiring its retention can give rise to an inference of spoliation, even if litigation involving the records is not reasonably foreseeable at the time the records are made. See e.g. Byrnie v. Town of Crowmwell Bd. of Educ., 243 F.3d 93, 109-10 (2nd Cir. 2001); Latimore v. Citibank Fed. Savs. Bank, 151 F.3d 712, 716 (7th Cir. 1998); Favors v. Fisher, 13 F.3d 1235, 1239 (8th Cir. 1994); Hicks v. Gates Rubber Co., 833 F.2d 1406, 1419 (10th Cir. 1987).

Johnson v. Metro. Gov't of Nashville, No. 3:07-0979, 3:08-0031, 2010 WL 3342211, at *18 (M.D. Tenn. Aug. 24, 2010); see also O'Brien v. Donnelly, No. 2:04-cv-0085, 2010 WL 3860522, at *7 (E.D. Ohio Sept. 27, 2010) (quoting same excerpt).

Based on the language in Johnson and the analysis from other circuits, the plaintiffs' request for sanctions for the destruction of pre-litigation timecards would require the court to determine whether the defendants violated the relevant FLSA

recordkeeping regulations. With such a limited record, the undersigned finds that such a determination is not supported. Although the plaintiffs have produced some evidence that the payroll schedules and payroll timesheets are not entirely accurate, the undersigned cannot determine as a matter of fact that the defendants failed to comply with the recordkeeping regulations. Therefore, based on the limited evidentiary record before the court, the motion for sanctions as to the timecards disposed of prior to being put on notice of the litigation is DENIED.

    3.   <u>Timecards Destroyed After Litigation Began</u>

The plaintiffs argue that sanctions are appropriate because of the continued practice of disposing the timecards after the lawsuit was filed. The plaintiffs argue that the defendants had notice of their duty to preserve on June 8, 2022, when their attorney signed a waiver of service, and that their continued practice of disposing of the timecards violated their duty to preserve evidence. (ECF No. 67-1 at PageID 322–24.) The defendants argue that they discarded and continue to discard the timecards as part of their regular course of business, but not before transferring the data to a separate "summary" document. (ECF No. 75 at PageID 506.) The defendants also claim that their continued practice of disposing of the timecards was based on good faith reliance on the advice of their CPA. (ECF No. 75-1 at PageID 510.)

The undersigned finds that the defendants breached their duty to preserve evidence by continuing to destroy the physical timecards after June 8, 2022. The plaintiffs filed the lawsuit on June 1, 2022, and mailed a demand letter to the defendants on June 8, 2022. (ECF No. 67-4 at PageID 469.) In that demand letter, the plaintiffs expressly requested that the defendants place a litigation hold on documents that may be relevant to the lawsuit. (Id. at PageID 471.) Nevertheless, despite being involved in active litigation, the defendants continued to dispose of the timecards. This continued disposal was intentional and by design, as the defendants admit that they continued to dispose of the timecards in the regular course of business.

The defendants argue that they discarded the timecards only after contemporaneously recording the data from the cards in the payroll schedules and payroll time sheets, so the information was preserved electronically. (ECF No. 75 at PageID 506.) However, there is evidence to suggest that the information on the payroll schedules and payroll time sheets does not accurately reflect the information contained on the original timecards. The plaintiffs have produced a photograph of Ricardo Teran's time card from an unidentified week of work. (see Ex. No. 1.)  The time card shows that there was at least one week where Ricardo Teran worked forty nine hours and forty three minutes, but there is no week on the payroll schedules and timesheets for Ricardo Teran's employment

that shows that he worked those hours. Ricardo Teran further testified that he had worked for defendants since 2015 and it was defendants' regular practice to pay any time over forty hours in cash at the regular rate. None of the defendants' records show any of these overtime hours. Because there is evidence that the payroll schedules and payroll time sheets do not accurately reflect the information contained on the original timecards, the defendants' creation of these summary documents cannot shield them from sanctions.

Further, the defendants argue that they did not have the required culpability because the continued discarding of the timecards was the result of good faith reliance on the advice of their internal bookkeeper and their retained CPA. The defendants cite no case law to suggest that accepting legal advice from a non-lawyer justifies the otherwise intentional destruction of the timecards. Finally, the timecards were certainly relevant to the plaintiffs' claims that the defendants failed to pay them overtime pay. Therefore, the motion for sanctions as to the timecards destroyed after the litigation began is GRANTED.

**C.   Sanctions**

The plaintiffs request the following sanctions for spoliation of evidence:

1)   An instruction to the jury that it may draw an inference adverse to Defendants as to the

      facts that would have been established by the destroyed evidence;

2) Default judgment as to liability in Plaintiffs' FLSA overtime claims;

3) An award of costs and attorney's fees incurred in filing the motion;

4) Any and all such other legal and equitable relief as this Court deems necessary, just and proper.

(ECF No. 67 at PageID 315.) The court finds that default judgment is a disproportionately excessive sanction. However, the undersigned finds that a permissive jury instruction as to the timecards destroyed after the lawsuit began and an award of costs and attorney fees are appropriate sanctions.

### III. CONCLUSION

For the reasons stated above, the plaintiffs' Motion to Compel is DENIED, and the plaintiffs' Motion for Sanctions is GRANTED in part and DENIED in part. Within fourteen days, plaintiffs' counsel shall file a declaration setting forth hours expended and hourly rates for legal professionals' time drafting the motion for sanctions, as well as preparing for and appearing at the July 10 evidentiary hearing.

IT IS SO ORDERED.

                                  s/Tu M. Pham
                                  TU M. PHAM
                                  Chief United States Magistrate Judge

                                  December 13, 2024
                                  Date