**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **ALFREDO TERAN, ELIBERTO PEREZ AMBROSIO, BALTAZAR CALDERON JR., ISMAEL GUEL, PATRICIO MARTINEZ, RICARDO TERAN, TRINIDAD TERAN, XAVIER TERAN,** *on behalf of themselves and all others similarly situated,* | ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) ) ) | **Case No. 2:22-cv-02338-JTF-tmp** <br><br> **FLSA Opt-In Collective** |
| **LAWN ENFORCEMENT, INC., JAMIE WALKER**, *individually,* **and JASON BRADEN**, *individually,* | ) ) ) ) ) | |
| **Defendants.** | ) | |

**ORDER DENYING DEFENDANTS' MOTION TO STRIKE; GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT;
AND DENYING DEFENDANTS' MOTION TO IMPLED.**

On June 28, 2024, Defendants Lawn Enforcement, Inc. ("Lawn Enforcement"), Braden Jason Walker[1] ("Jason Walker"), and Jamie Walker filed five (5) motions for summary judgment—Lawn Enforcement filed two motions for summary judgment, Jason Walker and Jamie Walker each filed one, and Defendants jointly filed another—as well as a Motion to Implead. (ECF Nos. 82–86.) Subsequently, Plaintiffs filed their Responses. (ECF Nos. 95, 101 & 107–109.)

---

[1] The case caption incorrectly states the Defendant's name. During his deposition, he clarified that his name is "Braden Jason Walker." (ECF No. 83-3, 6.)

Thereafter, Defendants filed a Motion to Strike and alternatively a Motion for Summary Judgment

on July 12, 2024, to which Plaintiffs responded on July 26, 2024. (ECF Nos. 98 & 106.) Defendants

filed Replies to some of the responses. (ECF Nos. 111–114.)

For the reasons set forth below:

- Lawn Enforcement's Motion for Partial Summary Judgment and to implead are **DENIED** (ECF No. 82);
- Jason Braden's Motion for Summary Judgment is **DENIED** (ECF No. 83);
- Lawn Enforcement's Motion to Decertify Class is **DENIED** (ECF No. 84);
- Jamie Walker's Motion for Summary Judgment is **DENIED** (ECF No. 85);
- Lawn Enforcement's Motion for Partial Summary Judgment is **GRANTED** (ECF No. 86);
- Lawn Enforcement's Motion for Summary Judgment is **DENIED** (ECF No. 86); and
- Defendants Motion to Strike or Alternatively Motion for Summary Judgment is **DENIED**. (ECF No. 98-1)

## I.      BACKGROUND[2]

On June 1, 2022, Alfredo Teran filed this action, pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201, *et seq.*, on behalf of himself and others similarly situated.[3] (ECF No.

1, 1 ¶ 1.) He alleged that Defendants violated the FLSA by willfully failing to pay overtime

premium for all hours worked over forty (40) in any given workweek. (*Id.* at 6 ¶ 42.) Teran worked

for Defendants from September 2019 through December 2020, and again from August 2021

through November 2021. (*Id.* at 4 ¶ 19.) Additional lawn mowing duties that were outside of

Teran's usual job duties caused him to regularly work an average of sixty hours per week. (*Id.* at

¶¶ 22 & 25.) He alleges that Defendants paid him an hourly rate of $16.00, but did not pay him the

---

[2] The Court only discusses the facts that are pertinent to Defendants' Motions. The facts are taken from the Parties' filings. Any disputes of fact are noted.

[3] In his Complaint, Alfredo Teran alleged that this collective action was brought pursuant to 29 U.S.C. § 216(b), "on behalf of all non-exempt employees who were, are, or will be employed by Defendants for the period of three (3) years prior to the commencement of this action to the present, and who were not compensated at one-and-one-half times the regular rate of pay for all work performed in excess of forty hours per week." (ECF No. 1, 3 ¶ 15.)

overtime rate of one-and-one-half times his hourly rate for all work performed in excess of forty (40) hours per week. (*Id.* at 4–5 ¶¶ 27–29.)

On June 8, 2022, Plaintiffs filed an Amended Complaint, which included seven new Plaintiffs: Eliberto Perez Ambrosio, Baltazar Calderon Jr., Ismael Guel, Patricio Martinez, Ricardo Teran, Trinidad Teran, and Xavier Teran. (ECF No. 7.) These new Plaintiffs also allege that they are similarly situated, that Defendants are employers under the FLSA, and that Defendants failed to pay the time-and-a-half overtime rate. (*Id.* at 2 ¶¶ 2–4.) All Plaintiffs claim to be former employees of Defendant Lawn Enforcement, a corporation owned by Co-Defendants Jason and Jamie Walker. (*Id.* at 2 ¶ 14 & 4 ¶ 26.)

The primary factual dispute between the parties centers on Plaintiffs' allegation that Defendants were willfully involved in an illegal pay scheme wherein their standard practice was to pay Plaintiffs a regular hourly rate by check for around the first forty (40) hours of work, but pay the same regular forty (40) hour rate by cash for any overtime hours worked. Plaintiff also allege Defendants did not preserve any paperwork or records to verify what was actually paid. (ECF No. 106-1, 5.) Plaintiffs say that this practice of destroying their timecards continued after this collective action was filed, even after Plaintiffs repeatedly requested that Defendants produce timecards in discovery starting in October 2022. (*Id.*) Defendants do not dispute that they destroyed Plaintiffs' timecards several months after processing them. (ECF No. 108-1, 5 ¶ 9.) The parties also dispute the relevant time period during which the FLSA violations pertaining to the Plaintiffs occurred.[4] (ECF No. 107-1, 2 ¶ 5.)

---

[4] Plaintiffs allege that FLSA violations to each Plaintiff occurred from a time period ranging from 2015 to 2022. (ECF No. 107-1, 2 ¶ 5.) However, Defendants argue that the relevant time period is June 1, 2019 to present as the cause of action accrued on June 1, 2022 with the filing of the Complaint. (*Id.*)

Case 2:22-cv-02338-JTF-tmp    Document 131    Filed 04/30/25    Page 4 of 19
PageID 1913

Lawn Enforcement is co-owned by Defendants Jason Walker (49%), and his wife Jamie

Walker (51%.) (ECF Nos. 107-1, 2 ¶ 4 & 108-1, 2 ¶ 4.) The business provides lawn maintenance

and landscape installation services. The parties dispute whether Jason Walker had a final say on

any decisions made by the Operations Manager regarding hiring or firing.

(ECF No. 107-1, 2–3 ¶ 8.) The parties also dispute whether Jamie Walker held an administrative

or essential role in the business. Defendants argue that her duties during the relevant period were

"non-supervisory and non-managerial clerical, customer service, and administrative duties," such

as billing, taking client calls, and scheduling services for Lawn Enforcement clients. (ECF No.

108-1, 2–3 ¶¶ 5, 7.) But Plaintiffs maintain that she played an essential role in operations by

managing the company's billing through QuickBooks software and the company's work schedule

through Smart Service logistics software, approving employee pay rates, processing employees'

timecards, and printing employee paychecks and preparing them for distribution. (*Id.* at 2 ¶ 6.) It

is undisputed that Jamie Walker never hired, fired, or disciplined any employees, but on occasion,

she handled employee complaints. (*Id.* at 3 ¶¶ 8–11.)

Plaintiff Trinidad Teran held the position of Foreman from 2017 until March, 2020. (ECF

No. 109-1, 2 ¶ 4.) In March of 2020, he was promoted to Operations Manager, for which he was

paid a salary plus a five percent commission for any sales made. (*Id.* at ¶¶ 5–7.) Until 2022, he had

the authority to hire employees.[5] (ECF No. 107-1, 2 ¶¶ 7–8.) Trinidad Teran's deposition testimony

indicates that he only fired one person during his tenure with the company.[6] (*Id.*) He was also

responsible for disciplining employees, being the primary contact for employees' scheduling and

work-related calls, fielding other phone calls and speaking with clients on a regular basis. (*Id.* at 3

---

[5] Parties dispute the extent to which Trinidad Teran hired employees at Lawn Enforcement, and whether he fired or set wages for employees at all. (ECF No. 107-1, 2–3 ¶ 8.)

[6] While Defendants allege that "Plaintiff Trinidad hired and fired most of the Lawn Enforcement employees," Plaintiffs argue that "he only fired one person during his tenure with the company." (*Id.*)

¶ 9.) The parties dispute whether Teran, or the Walkers (through the iPad system) set the drivers'

routes. (ECF No. 109-1, 3 ¶¶ 10–11.) The Walkers jointly supervised Teran's managerial work;

they met with him each morning regarding the upcoming workday. (ECF No. 108-1, 4 ¶ 5.)

On September 30, 2022, Plaintiffs filed a Motion to Conditionally Certify the Class, which

the Court granted on May 18, 2023. (ECF Nos. 21 & 41.) All eight original Plaintiffs filed their

consent forms on July 6, 2024, or July 7, 2024. (ECF Nos. 87–94.) Four other Plaintiffs opt-ed

into the collective action by filing their signed consent forms. (ECF Nos. 12 & 54–56.)

## II.    LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"A fact is material if the fact might affect the outcome of the lawsuit under the governing

substantive law." *Phipps v. Accredo Health Group, Inc.*, 2016 WL 3448765, at \*1 (W.D. Tenn.

June 20, 2016) (internal quotations omitted). The court must view the facts in the record and

reasonable inferences that can be drawn from those facts in the light most favorable to the

nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once a properly supported motion for summary judgment has been filed, the party

opposing summary judgment must show that there is a genuine dispute of material fact by pointing

to evidence in the record or arguing that the moving party is not entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a), (c)(1). "When confronted with a properly supported Motion for

Summary Judgment, the party with the burden of proof at trial is obligated to provide concrete

evidence supporting its claims and establishing the existence of a genuine issue of fact."

*Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) (citing *Celotex*

*Corp. v. Catrett*, 477 U.S. 317 (1986)). The opposing party "cannot rest solely on the allegations

made in [his] pleadings." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (quoting *Skousen v.*

*Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002)).

A genuine issue for trial exists if the evidence would permit a reasonable jury to return a

verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The

court's role is not to weigh evidence or assess the credibility of witnesses, but simply to determine

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law." *Kroll v. White Lake Ambulance*

*Auth.*, 763 F.3d 619, 623 (6th Cir. 2014) (quoting *Anderson*, 477 U.S. at 251–52).

### B. Motion to Strike

Pursuant to Fed. R. Civ. P. Rule 12(f), "[t]he court may strike from a pleading an

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Pleadings

include complaints, answers to complaints, answers to counterclaims designated as counterclaims,

answers to crossclaims, third-party complaints, answers to third-party complaints, and if the court

orders, replies to answers.  Fed. R. Civ. P. Rule 7(a); *see also Fox v. Mich. State police Dep't*, 173

F. App'x 372, 375 (6th Cir. 2006)

### C. Motion to Implead

A "defending party may, as third-party plaintiff, serve a summons and complaint on a

nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14.

Whether to grant leave is ultimately in the district court's discretion. *Emps. Insurance Company*

*of Wausau v. Dan Walker Assocs., Inc.*, No. 22-cv-2530, 2023 WL 11884597, at *3 (W.D. Tenn.

June 27, 2023).

### III.     DISCUSSION

Defendants seek dismissal of Trinidad Teran ("Teran") as a plaintiff and dismissal of his claims on the grounds that, as a former Operational Manager for Lawn Enforcement, he is an "employer" under the terms of the FLSA. (ECF No. 82.) Based on this argument, they also seek leave to implead him as a third-party defendant. (*Id.*) Defendants argue that, because of Teran's employment status, Plaintiffs cannot show a "strong likelihood" that he is similarly situated to the other opt-in Plaintiffs; thus, the collective action should be decertified. (ECF No. 84.) Defendants also move to dismiss Plaintiffs claims against Defendants Jason and Jamie Walker, arguing that Plaintiffs failed to meet their burden to show that they are employers as defined in the FLSA, making them individually liable. (ECF Nos. 83 & 85.) Finally, Defendants move to strike or dismiss Plaintiffs' written consents as time-barred. (ECF Nos. 86 & 98.)

Plaintiffs respond that Trinidad Teran's FLSA claim does not include the duration he worked as a manager, and his claims need not be dismissed. (ECF No. 109, 7–8.) Second, they argue that prior to March 2020, Trinidad Teran was in every sense "similarly situated" to the other plaintiffs. (ECF No. 95, 3.) In addition, as to both Walkers, they argue that their "direct and pervasive involvement" with the daily management and operations of Lawn Enforcement satisfies the FLSA's definition of "employer." (ECF Nos. 107, 4–5 & 108, 4–5.)

### A. Defendant Lawn Enforcement's Motion for Summary Judgment – Conditional Certification

The FLSA requires employers to pay their non-exempt employees one and one-half times the employee's regular rate of pay for hours worked in excess of 40 hours per week. 29 U.S.C. §§ 206–207. When a covered employer fails to do so, § 216(b) authorizes an employee to bring a "representative" or "collective action" on behalf of themselves and other "similarly situated" employees. *Id.* Other employees seeking relief must opt-in to any such action by filing a written

consent with the court to become a member of the class and be bound by any judgment entered in the action. *Id.* Therefore, other similarly situated employees can become parties to an FLSA action, but only if they affirmatively choose to do so. *Clark v. A&L Homecare and Training Center, LLC*, 68 F.4th 1003, 1007 (6th Cir. May 19, 2023). In *Hoffman-LaRoche Inc. v. Sperling*, the Supreme Court held that "district courts have discretion, in appropriate cases, to implement" § 216(b) by facilitating notice to potential members of the FLSA collective action. 493 U.S. 165, 169–70 (1989). Without any additional guidance about how this procedure should function, the majority of district courts "adopted a two-step approach first described in" *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987). *See Clark*, 68 F.4th at 1008. Under *Lusardi*'s "first step—called 'conditional certification'—a district court [could] facilitate notice of an FLSA suit to other employees" based on a "modest factual showing that they [were] 'similarly situated' to the original plaintiffs." *Id.*

The FLSA does not directly define "similarly situated."  To determine whether members of the FLSA collective action are "similarly situated," courts in the Sixth Circuit have historically looked to three "non-exhaustive" factors: (1) the "factual and employment settings of the individual[] plaintiffs"; (2) the different individual defenses a plaintiff may be subject to; and (3) "the degree of fairness and procedural impact of certifying the action as a collective action." *Williams v. Cincinnati Lubes, Inc.*, No. 3:23-cv-00900, 2024 WL 4445841, at *4 (M.D. Tenn. Oct. 8, 2024) (internal citations and quotations omitted). Plaintiffs can demonstrate that they are similarly situated if they suffered from a single FLSA-violating policy of the employer, or if their FLSA claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* (quoting *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2019)). In cases where employers can show a formal policy

8

of compliance with the law and compensate plaintiffs for all time worked, plaintiffs may still

satisfy their burden by showing substantial evidence of a *de facto* policy of circumventing the law.

*Id.* (internal citations and quotations omitted).

Consistent with *Lusardi*, Plaintiffs filed a Motion to Conditionally Certify Class on

September 30, 2022, which this Court granted on May 18, 2023. (ECF Nos. 21 & 41.) However,

the Sixth Circuit issued an opinion abandoning *Lusardi*'s "fairly lenient" standard the very next

day, and adopted a stricter standard. *Clark*, 68 F.4th at 1011. In that case, the Sixth Circuit

explained that other employees become parties to an FLSA suit (as opposed to mere recipients of

notice in Rule 23 class actions) only after they opt in and the district court determines—not

conditionally, but conclusively—that each of the employees is in fact "similarly situated" to the

original plaintiffs. *Id.* The Sixth Circuit concluded that "similarity" calls for a "factbound" analysis

that can only be made after notice and after other plaintiffs have been subjected to discovery. *Id.*

The substantially similar "standard requires a showing greater than the one necessary to create a

genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* Thus, for a

district court to facilitate notice of an FLSA suit to other employees so they may opt-in, the

plaintiffs must provide enough evidence to show a "strong likelihood" that those other employees

are similarly situated to the plaintiffs themselves.[7] *Rashad v. Mason's Pro. Cleaning Serv., LLC*,

No. 2:22-cv-02635-JTF-tmp, 2023 WL 5154534, at *2 (W.D. Tenn. Aug. 10, 2023).

Thereafter, Defendants in this case filed a Motion For Reconsideration on June 13, 2023,

which this Court denied on August 1, 2023. (ECF Nos. 41 & 53.) Based on the detailed experiences

of the eight Plaintiffs, the Court concluded that Plaintiffs met their burden in showing a strong

likelihood that the potential opt-in plaintiffs were similarly situated to the Plaintiffs, and that they

---

[7] The *Clark* majority did not "address the underlying threshold for FLSA similarity, which remains the same." *Clark*, 68 F.4th at 1020.

were also similarly situated to each other. (ECF No. 53, 5–6.) Now, armed with discovery, Defendants request that the Court again reconsider its Order certifying this collective action. (ECF No. 84.)

At first glance, it appears that Plaintiffs failed to meet their burden of showing a strong likelihood that Trinidad Teran is similarly situated to the other Plaintiffs. As Defendants point out, and the record now demonstrates, Teran's job responsibilities and compensation at Lawn Enforcement differed from those of the other Plaintiffs.[8] (ECF No. 109-1, 2 ¶ 4.) As an Operations Manager from March 2020 to 2022, he was a supervisor with authority to hire, discipline, and manage other employees.[9] (*Id.* at ¶ 8.) (ECF No. 107-1, 3 ¶ 9.) Other employees, like Elder Ambrosio Perez, testified that he saw Teran as holding a position of authority and that he would go to Teran if there was an issue concerning any work-related tasks. (ECF No. 84-5, 1–2.) In this role, Teran was paid a salary plus a commission while the other Plaintiffs only received hourly wages. (ECF No. 109-1, 2 ¶¶ 5–7.)

However, nowhere in the Amended Complaint do Plaintiffs allege any FLSA claim that covers the time period when Teran was the Operations Manager. The Record clearly shows that from June 1, 2019 to March 2020, Teran was employed as a Foreman. Otherwise, like all the other lower level employees, he shared similar job responsibilities and was paid an hourly wage. (ECF No. 109, 8.) (*See also* ECF No. 7.) Also during this time, Teran did not receive full overtime pay from Defendants, like the other Plaintiffs. (*See* ECF No. 7.) In line with this, Plaintiffs argue that prior to March 2020, Teran was, in every relevant sense, "similarly situated" to the other Plaintiffs. (ECF No. 95, 3.) The Court agrees and will not decertify the collective action. The Record shows

---

[8] The supporting record contains depositions of Jason Walker, Trinidad Teran, and Elder Ambrosio Perez.
[9] He had at least once also fired an employee. Parties dispute whether Trinidad Teran decided the pay rate for employees and set the route that each landscaping crew complete in a given day.

a strong likelihood that Teran was similarly situated to the other Plaintiffs before March 2020. *See*

*O'Brien v. Ed. Donnelly Enters.*, 575 F.3d 567, 586 (6th Cir. 2009) (noting that a collective action

allows a plaintiff who has suffered only a small monetary harm to join a larger pool of similarly

situated plaintiffs). As such, the motion is **DENIED**.

   B. **Defendants Lawn Enforcement, Jason Walker, and Jamie Walker's Motions for
      Summary Judgment – Status as an "Employer" under the FLSA**

   To be held individually liable under the FLSA, a Defendant must be an "employer." 29

U.S.C. § 203(b). Whether a party is an employer within the meaning of the FLSA is a legal

determination. *Dole v. Elliott Travels & Tours, Inc.*, 942 F.2d 965, 965 (6th Cir. 1991). Under the

statute, an employer includes "any person acting directly or indirectly in the interest of an employer

in relation to an employee." 29 U.S.C. § 203(b). A person is defined as "an individual, partnership,

association, corporation, business trust, legal representative or any organized group of persons."

*Id.* at § 203(a). The Sixth Circuit recognizes that the FLSA uses the term "employer" more broadly

than it is used in ordinary speech. *See Bevels v. Fedex Corp.*, No. 07-2448, 2007 WL 9706326, at

*2 (W.D. Tenn. Dec. 6, 2007); *Busch v. Metro Pcs d/b/a Tablet Solutions, Inc.*, No. 15-2442, 2016

WL 705226, at *3 (W.D. Tenn. Feb. 19, 2016). In determining whether a party is an employer,

"'economic reality' controls rather than common law concepts of agency." *Dole*, 942 F.2d at 965

(citing *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961)). The 'economic reality'

test instructs courts to look at who had operational control of day-to-day functions, rather than

exclusive control. *Id.* "Operational control is present where a person: (1) is an officer of a

corporation, (2) has a significant ownership interest in it, (3) controls significant functions of the

business, and (4) determines salaries and makes hiring decisions." *Merriweather v. Temple Plaza*

*Hotel, Inc.*, No. 19-11854, 2022 WL 1522089 (E.D. Mich. May 13, 2022) (citing *Dole*, 942 F.2d

at 965). A person controls a significant function in the business when they are directly involved

11

with the employment relationship, such as by hiring, supervising, paying, and managing employees on behalf of the actual employer. *Diaz v. Longcore*, 751 F. App'x 755, 758 (6th Cir. 2018). But none of these factors are dispositive, so courts look to the economic reality presented by the facts of each case. *Dole*, 942 F.2d at 965.

In their Motions for Summary Judgment, the Defendants dispute the reach of the term "employer" under the FLSA as it applies to Teran and Defendants Jason Walker and Jamie Walker. The Court addresses these arguments below.

### 1. *Whether Teran is an employer under the FLSA*

During discovery, Defendants claim they learned facts that demonstrate Teran, is an "employer." (ECF No. 82-1, 2.) They describe his role in hiring and disciplining employees as the Operations Manager from March 2020 to 2022. Plaintiffs do not dispute this. (*See* ECF No. 109, 8.) It is on the basis of these job responsibilities that Defendants label Teran an "employer," and request his dismissal as a plaintiff.

As an Operations Manager, Turan recruited, hired, disciplined, supervised, and managed employees for Lawn Enforcement. (ECF No. 107-1, 2–3 ¶¶ 7, 9.) He did not set employee wages, but admits that he conversed with the employees he hired and brought their salary requests to Jason Walker. (ECF No. 83-4, 79.) Thus, Teran was an "employer" under the FLSA when he was an Operations Manager. However, because his FLSA claim does not include the time period when he was an Operations Manager, his claims need not be dismissed. Thus, Defendant Lawn Enforcement's motion for summary judgment is **DENIED**.

### 2. *Whether Jason and Jamie Walker are employers under the FLSA*

Defendants argue that Jason Walker and Jamie Walker did not have the requisite operational control over Lawn Enforcement to be held individually liable as "employer[s]" under

the FLSA because Teran was delegated the power to hire, fire, decide pay, and manage the employees of Lawn Enforcement. (ECF No. 83-1, 5–6.) They allege that Jason Walker only performed maintenance on trucks and helped out in the office when call volumes were high; and that Jamie Walker only performed clerical tasks. (ECF No. 83-1, 5 & 85-1, 5.) However, the record belies these arguments. Jason Walker was involved in Lawn Enforcement's business operations; he frequently exercised oversight and approval control over Teran's actions and decisions. While Teran had some authority to hire, fire, and set pay, Jason Walker reserved and exercised the power to contest employees' wages, and on at least one occasion, rejected Teran's decision to fire an employee. (ECF No. 83-3, 23.) In addition, Teran had to "run [new hires] by Jason . . . he ha[d] to know." (ECF Nos. 83-2, 23 & 83-3, 23.) Also, Jason Walker disciplined Teran at least once by suspending him after he went "on his bender[]." (ECF No. 83-3, 23–24.) In addition, Teran claims he had daily (in-person or telephonic) morning meetings with the Walkers before he would assign tasks to other employees. (ECF No. 83-4, 69.)  As for Jamie Walker, Defendants alleged she never hired, fired or disciplined any employees. (ECF No. 108-1, 3.) However, in addition to having a significant ownership interest in the company, Jamie Walker, along with Jason Walker, supervised Teran's work by having daily meetings with him to discuss operations and occasionally handled employee complaints. (*Id.* at 4.) She also processed timecards, sent employee time information to the company's accountant, and later destroyed the timecards. (*Id.* at 4–5.)

To be an "employer" under the FLSA, one need not exercise exclusive control over business operations. *Dole*, 942 F.2d at 966 (noting that defendant's delegation of some aspects of operational control to others did not preclude the court's finding that he was an "employer" under the FLSA). While Teran exercised some operational control over certain areas of Lawn Enforcement's business, so too did the Walkers. They had significant ownership interests in Lawn

Enforcement, controlled major aspects of the company's day-to-day functions, and determined

employee salaries. They also had oversight over Teran's decisions regarding pay and firing.

Hence, under the FLSA, Defendants Jason Walker and Jamie Walker are "employers" and are

personally liable for violations committed during the relevant time period. Therefore, Defendants

Jason and Jamie Walker's Motions for Summary Judgment are **DENIED**.

    **C. Defendants Motion to Strike Plaintiffs' Filed Written Consent Forms**

Defendants collectively move to strike Plaintiffs written consent forms, arguing they were

filed after a court mandated deadline. (ECF No. 98-1, 5.) However, Plaintiffs written notices of

consent to opt into the litigation are not pleadings and as such, are not subject to a motion to strike.

F.R. Civ. P. 12(f); *and Rivera v. CHSPSC, LLC*, No. 2:23-cv-00336-KWR-kk, 2024 WL 3495140,

at *2 (D.N.M. July 22, 2024). [10] Accordingly, the Motion to Strike is **DENIED**.

    **D. Defendants Motions for Summary Judgment– Applicable Statute of Limitations and Written Consent to Join Forms**

In their Motions, Defendants argue that a two-year—instead of three-year—statute of

limitations applies to the claims at hand because Plaintiffs failed to show willfulness. (ECF Nos.

86-1, 5 & 98-1, 11.) They further aver that even then, Plaintiffs' claims are time-barred because

they failed to file their written consent, as is required by the FLSA, to join this collective action

within the two-year statute of limitations.[11] (ECF Nos. 86-1, 10 & 98-1, 10.) They additionally

claim that all employees wishing to pursue FLSA claims were required to file their written consent

to join forms within 90 days of the mailing of the Court Approved Notice. (*See* ECF No. 41.)  Not

surprisingly, Plaintiffs argue that a three-year statute of limitations applies because their claims

---

[10] Should the Motion to Strike be denied, Defendants request alternate relief in the form of summary judgment on the ground that the claims are now time-barred because the written consents were filed after the two-year statute of limitations. (ECF No. 98-1, 11.) The Court addresses this motion below.

[11] The eight plaintiffs had not filed their written consent to join forms as of the filing of Defendants' motion for summary judgment.

are based upon willful violations. (ECF Nos. 101, 3 & 106, 4.) Plaintiffs also contend that summary

judgment is inappropriate because of the existence of factual disputes, and argue that willfulness

issue is a question of fact to be decided by a jury. They also point out that the Court Order did not

establish a 90-day deadline as the Defendants claim. (ECF No. 101, 3.) The Court addresses all

these arguments below.

### 1. *Whether two- or three-year statute of limitations applies*

Under the FLSA, actions for unpaid overtime compensation must be commenced within

two years after the cause of action accrued, except that a cause of action arising out of a willful

violation may be commenced within three years after the cause of action accrued. 29 U.S.C. §

255(a); *see also Frye v. Baptist Memorial Hospital, Inc.*, 495 F. App'x 669, 675 (6th Cir. 2012).

A FLSA violation is willful if the employer "knew or recklessly disregarded whether its conduct

was prohibited by the FLSA." *Walsh v. KDE Equine, LLC*, 56 F.4th 409, 415 (6th Cir. 2022)

(quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985)). Willfulness is a high

bar. *See Su v. KDE Equine, LLC*, No. 24-5309, 2024 WL 5199300, at *3 (6th Cir. Dec. 23, 2024).

The Supreme Court has held that negligence alone or an employer's unreasonable efforts at

compliance (but not reckless or knowingly deficient) are insufficient to establish willfulness. *See*

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.13 (1988). Whether an employer has

willfully violated the FLSA is a question of fact. *Walsh*, 56 F.4th at 416. In another FLSA case,

the Sixth Circuit, upon finding no emails or text messages from an employer showing that they

knew they were committing FLSA violations, held that summary judgment is inappropriate if the

factual record contains no "smoking gun" evidence of any willfulness by the employer. *See Su,*

*LLC*, No. 24-5309, 2024 WL 5199300, at *3 (6th Cir. Dec. 23, 2024). The same is true here.

Defendants argue that their violations, if any, were not willful as demonstrated by the fact that

Jamie Walker would return the timecards of employees who complained of their checks being short to be corrected, and that Defendants would occasionally write supplemental checks to employees who claimed their check was incorrect. (ECF No. 86-1, 6–7.) Whereas Plaintiffs allege that Defendants' conduct of destroying the timecards shows willfulness. (ECF No. 101, 3–4.) Since there exist genuine disputes of material facts showing willfulness, Defendants are not entitled to judgment as a matter of law. This matter of willfulness will proceed to trial, which in turn will determine the applicable statute of limitations.

### 2. *Plaintiffs' written consent to join forms*

Next, the Court turns to the issue of the written consents. Though the Defendants refer to the Court's May 18, 2023 Order to support their argument, nothing in that Order sets out a 90-day deadline for opt-in plaintiffs to file their written consents. (*See* ECF No. 41, 6.)

A cause of action accrues under the FLSA, as a general rule, "at each regular payday following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Frye*, 995 F. App'x at 675 (quoting *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 188 (6th Cir. 2008)). A plaintiff "commences" an FLSA suit by filing a complaint. 29 U.S.C. § 256; *Perry v. Hardeman Cnty. Gov't.*, No. 1:19-cv-1106-STA-cgc, 2024 WL 2964833, at *3 (W.D. Tenn. June 12, 2024). But for bringing a collective action for FLSA violations, the suit "commences" for each "individual claimant" on the date when a complaint is filed both if the claimant is "specifically named as a party plaintiff in the complaint" and the claimant's "written consent to become a party plaintiff" is also filed with the Court. 29 U.S.C. § 256(b); *Perry*, 2024 WL 2964833, at *3. However, if the claimant is not named in the complaint or they have not filed a written consent form, their action "commences" "on the subsequent date" when they file a written consent. 29 U.S.C. § 256(b); *Perry*, 2024 WL 2964833, at *3. Plaintiffs

16

need to comply with the written consent requirement within the statute of limitations. *See Frye*, 495 F. App'x at 676.

Here, an amended complaint—naming Alfredo Teran, Eliberto Perez Ambrosio, Baltazar Calderon, Jr., Ismael Guel, Patricio Martinez, Ricardo Teran, Trinidad Teran, and Xavier Teran—was filed "on behalf of themselves and all others similarly situated," on June 8, 2022 (*See* ECF No. 7.) Then, individuals not originally named in the complaint filed their consent to join forms: Blake Hurst on July 13, 2022 (ECF No. 12.); Raul A. Hernandez on September 1, 2023 (ECF No. 54.); Elder Ambrosio Perez on September 27, 2023 (ECF No. 55.); and Cesar Perez Reynoso on October 15, 2023 (ECF No. 56.). Thereafter, the eight plaintiffs (named in the amended complaint) filed their consent to join forms on July 6, 2024 or July 7, 2024. (ECF Nos. 87–95.) In this way, the original eight plaintiffs commenced suit on June 8, 2022 in a "dual capacity." *See Perry*, 2024 WL 2964833, at *4 (W.D. Tenn. June 12, 2024) (holding that plaintiffs commenced their individuals claims at the filing of the complaint and collective action claims at the filing of the signed written consent forms). Thus, each group of claims "commenced" at different times: the original claim for the eight named plaintiffs on June 8, 2022; and the collective action claims on July 7, 2024. All plaintiffs, except Alfredo Teran and Trinidad Teran, worked for Defendants through mid-May 2022, and their collective action claims commenced on July 8, 2021. (ECF Nos. 7 & 101-1, 4–5.) Therefore, their written consents were filed well within the three-year statutory period (if the FLSA violation was willful). But if the alleged violation was non-willful, these claims would be time-barred. Based on Plaintiffs' Initial Disclosures, Alfredo Teran is claiming backpay for years 2019 to 2021; however, his last working week is not mentioned anywhere in the record either by Plaintiffs or Defendants. (*See* ECF No. 101-1, 4.) Thus, based on the deficient record, the Court cannot determine whether his claims fall within the statute of limitations. As for

Trinidad Teran, he was a non-exempt employee only until March 2020, therefore his claims are barred under either statute of limitations. Thus, the motions for summary judgment are **DENIED** with respect to the request to dismiss Alfredo Teran, Eliberto Perez Ambrosio, Baltazar Calderon, Jr., Ismael Guel, Patricio Martinez, Ricardo Teran, and Xavier Teran's claims. However, they are **GRANTED** with respect to Trinidad Teran's claims.

### E. Defendant Lawn Enforcement's Motion to Implead Trinidad Teran

On June 28, 2024, Defendants also requested leave from this Court to file a Motion to Implead Named Plaintiff Trinidad Teran as a third-party defendant. (ECF No. 82-1, 7.) By alleging that Trinidad Teran is an "employer" under FLSA on the basis that he had "operational control" of the daily functions of Lawn Enforcement as the Operations Manager, Defendants seek to shift the liability asserted against them to Trinidad Teran. (*Id.*) In turn, Plaintiffs responded that the motion is untimely; that Trinidad Teran's liability is not derivative of Defendants' liability; the motion will complicate trial and prejudice the plaintiffs; and it would foster a "clearly frivolous and unmeritorious claim." (ECF No. 109, 4–5.)

Here, Teran is a party in this case and therefore the motion to implead him is inappropriate under FRCP 14. As such, the Court need not address the parties' arguments as to the impleader. The motion is **DENIED**.

### IV.    CONCLUSION

Based on the foregoing, Defendants' Motion to Strike and Motion to Implead are both **DENIED**. The motions for summary judgment are **DENIED IN PART AND GRANTED IN PART**. Specifically, the motion for summary judgment requesting decertification, dismissal of Jason and Jamie Walker as defendants, and dismissal of claims of seven named plaintiffs (Alfredo Teran, Eliberto Perez Ambrosio, Baltazar Calderon, Jr., Ismael Guel, Patricio Martinez, Ricardo

Teran, and Xavier Teran) as time-barred are **DENIED**. The motion for summary judgment

requesting dismissal of Trinidad Teran's claims as time-barred is **GRANTED**.

     **IT IS SO ORDERED** this 30th day of April, 2025.

                               *s/John T. Fowlkes, Jr.*

                               JOHN T. FOWLKES, JR.
                               UNITED STATES DISTRICT JUDGE