## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **ALFREDO TERAN, ELIBERTO PEREZ AMBROSIO, BALTAZAR CALDERON JR., ISMAEL GUEL, PATRICIO MARTINEZ, RICARDO TERAN, TRINIDAD TERAN, and XAVIER TERAN,** *on behalf of themselves and all others similarly situated,* | ) ) ) ) ) ) ) ) | |
| | ) | **Case No. 2:22-cv-02338-JTF-tmp** |
| **Plaintiffs,** | ) ) | **FLSA Opt-In Collective** |
| | ) | |
| **v.** | ) ) | |
| | ) | |
| | ) | |
| **LAWN ENFORCEMENT, INC., JAMIE WALKER**, *individually,* **and JASON BRADEN**, *individually,* | ) ) ) ) | |
| **Defendants.** | ) | |

## ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR SPOLIATION SANCTIONS

Before the Court is Plaintiffs' Renewed Motion for Spoliation Sanctions, filed on August 9, 2025. (ECF No. 146.) Defendants Lawn Enforcement, Inc., Jamie Walker, and Braden Jason Walker[1] (collectively "Lawn Enforcement") responded in opposition on September 5, 2025, and Plaintiffs filed a reply on September 6, 2025. (ECF Nos. 152, 153.) For the following reasons, Plaintiffs' motion is DENIED.

---

[1] Defendant Braden Jason Walker was misidentified in Plaintiffs' initial pleading as "Jason Braden." (ECF No. 152, 3 n.1.) Mr. Walker clarified his correct legal name during his March 14, 2024, deposition. (ECF No. 83-3, 6.)

# I.  BACKGROUND

In June 2022, Plaintiffs initiated this collective action against their former employer Lawn Enforcement, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (ECF Nos. 1, 7.) The complaint asserts that Defendants willfully failed to pay statutorily required overtime compensation to Plaintiffs and similarly situated employees. (ECF No. 7, ¶¶ 87-90.) On May 18, 2023, the Court granted Plaintiffs' Motion to Conditionally Certify the Class. (ECF No. 41.) Thereafter, each of the above-named plaintiffs filed their consent to join as party plaintiffs on July 6, 2024. (ECF Nos. 87-94.)

## A.    First Motion for Sanctions

The instant motion is Plaintiffs' second request for sanctions. In October 2022, Plaintiffs served several discovery requests related to Defendants' methods of timekeeping and corresponding records for hourly employees. (ECF Nos. 62-1, 62-2.) Rather than producing copies of physical timecards, Defendants produced payroll timesheets purporting to reflect Plaintiffs' weekly hours worked and wages paid, as well as payroll schedules summarizing these weekly totals. (*Id.*; *see also* ECF No. 67-2.) Plaintiffs moved to compel production of the original timecards on March 11, 2024. (ECF No. 62.) However, during his deposition on March 14, 2024, Jason Walker revealed that Lawn Enforcement no longer had Plaintiffs' relevant timecards, despite Defendants' notice of a litigation hold since at least June 8, 2022. (ECF No. 67-1, 2, 5-6.) Plaintiffs then moved for sanctions on May 21, 2024. The Court referred the motion to Chief Magistrate Judge Tu M. Pham for determination. (ECF Nos. 67, 72.)  In response to the motion, Defendants alleged that they began discarding timecards in good-faith reliance on the advice of Lawn Enforcement's bookkeeper and accountant in early 2022. (ECF Nos. 75, 4-5; 75-1, 2.) They also claimed that the payroll timesheets and schedules produced to Plaintiffs were created

"contemporaneously" and thus reflect the exact data contained in the discarded timecards. (ECF No. 75, 4-5.)

Magistrate Judge Pham granted the motion in part on December 13, 2024. (ECF No. 120.) With respect to Defendants' post-litigation spoliation, Judge Pham agreed that Defendants breached their duty to preserve evidence by continuing to discard employees' physical timecards after a litigation hold was in place. (*Id.*, 14.) With respect to the pre-litigation destruction of timecards, Plaintiffs argued that such conduct could serve as the basis for sanctions because of Defendants' regulatory duty to preserve records, even if Defendants had no notice of forthcoming litigation. (*Id.*, 10-11.) However, Judge Pham could not determine whether Defendants breached a regulatory duty based on the limited evidentiary record before him. (*Id.*, 13.) He denied sanctions for pre-litigation spoliation on those grounds. (*Id.*)

**B.    Second Motion for Sanctions**

Plaintiffs filed the instant motion on August 9, 2025. (ECF No. 146.) They seek the following sanctions for Defendants' alleged pre-litigation destruction of payroll records:

1.   Adverse inference instruction permitting the jury to infer that the destroyed timecards—created prior to the filing of this lawsuit—would have shown hours favorable to Plaintiffs and unfavorable to Defendants;

2.   Exclusion of Defendants' payroll summaries as rebuttal evidence regarding hours worked;

3.   An award of reasonable attorneys' fees and costs incurred in investigating and briefing this renewed motion; and

4.   Any other relief the Court deems just and proper to remedy the prejudice caused by Defendants' conduct and to deter similar misconduct in the future.

(*Id.*, 11-12.)

Plaintiffs offer "newly discovered, material evidence" that they assert resolves the "evidentiary gap" identified in Judge Pham's order.  (*Id.*, 2, 8); *see* Fed. R. Civ. P. 60(b)(2). This

newly discovered evidence consists of several photographs of timecards stored on Plaintiffs' old cellphones. The pictured timecards are undated and several are unnamed. Plaintiffs explain that, at the time of arguing Plaintiffs' First Motion for Sanctions, the photographs offered "limited evidentiary value." (ECF No. 146, 4 n.1.) However, Plaintiffs allege that they "[o]nly recently . . . realize[d] that the images could be printed with metadata showing the date each photo was taken." (*Id.*)  Using the metadata and declarations from several Plaintiffs corroborating the timecards' authenticity, Plaintiffs identify discrepancies in hours recorded on the timecards versus in Defendants' summary payroll documents. (*Id.*, 4-5.)  Plaintiffs argue that these discrepancies offer proof of Defendants' systematic underreporting of overtime and noncompliance with FLSA recordkeeping requirements.[2] (*Id.*, 4-5.)

Plaintiffs offer two additional declarations of former employees whose timecards were not recovered. The first is from named Plaintiff and former Lawn Enforcement Operations Manager Trinidad Teran. (ECF No. 146-4.) Teran declares that, contrary to the deposition testimony of Jason Walker, he never observed Defendants discarding timecards throughout his five years of employment with Lawn Enforcement. (*Id.*, 1.) Instead, Teran "believe[s] that any destruction of timecards occurred only after the filing of this lawsuit." (*Id.*) Second, Plaintiffs submit the declaration of former employee Kenneth Tidwell as evidence of an apparent racial discrepancy in Black and Hispanic crew members' compensation. (ECF No. 146-5.) According to Mr. Tidwell, Black employees routinely received overtime compensation in their paychecks, while Hispanic employees were often not credited for overtime or paid in cash when they were. (*Id.*) Plaintiffs

---

[2] Plaintiffs also attach five photographs of timecards recovered from Plaintiff Alfredo Teran's cellphone. (ECF No. 146-3.) All but one appear to be missing metadata dating the timecards. Mr. Teran believes that the five timecards are from 2018, before Lawn Enforcement began compiling payroll summaries. (*Id.*) Plaintiffs argue that, while these 2018 records cannot be used to show discrepancies in Defendants' payroll summaries, they nevertheless demonstrate that "substantial overtime work was commonplace at Lawn Enforcement." (ECF No. 146, 6.)

rely on Mr. Tidwell's testimony as evidence of Defendants' "willfulness, if not bad faith," arguing that "[t]his targeted disparity undermines any claim of a uniform retention or destruction policy." (ECF No. 146, 10.)

Defendants responded on September 5, 2025. (ECF No. 152.) They raise three arguments against the motion. First, Defendants maintain that the summary payroll documents they produced reflect the exact data contained in Plaintiffs' timecards. (*Id.*, 4-5.) Thus, Defendants maintain that they have complied with the requirements of 29 C.F.R. § 516.6, which mandates that employers subject to the FLSA preserve time and earnings records for at least two years. (*Id.*) Second, Defendants argue that Plaintiffs should be barred from relying on the "newly discovered" timecard images for failure to comply with Federal Rule of Civil Procedure 37(c). (*Id.*, 5-6.) Defendants assert that Plaintiffs failed to either produce or supplement their initial disclosures with the images as required by Rule 37(c). (*Id.*) Third, Defendants attack the sufficiency of Plaintiffs' evidence. Defendants argue that the photographs Plaintiffs rely on are undated, of poor quality, and contain handwritten markings of questionable authenticity. (*Id.*, 6-7.) Defendants also argue that this evidence supports the accuracy of Defendants' records because some of the information reflected on the pictured timecards appears to correlate with Defendants' summary documents. (*Id.*, 7.)

Plaintiffs filed a reply on September 6, 2025. (ECF No. 153.) They repeat several arguments regarding Defendants' admitted discarding of timecards and purported willfulness in selectively underreporting overtime hours for Hispanic employees. Plaintiffs also respond that, because Plaintiffs properly disclosed possession of "paychecks and pictures of timecards" at the start of this litigation, no grounds exist to exclude the photographs under Rule 37. (*Id.*, 2.)

## II.  LEGAL STANDARD

"Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *McCarty v. Covol Fuels No. 2, LLC*, 644 F. App'x 372, 378 (6th Cir. 2016) (quoting *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003)).  Districts courts have broad discretion in fashioning a proper sanction, which may include dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence. *Id.* at 652-53 (citations omitted). "Generally, 'a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 285 (6th Cir. 2020) (quoting *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)).

## III.  DISCUSSION

### A.     Use of Newly Discovered Evidence

Before weighing the merits of Plaintiffs' motion, the Court first addresses Defendants' argument under Federal Rules of Civil Procedure 26 and 37. Rule 26(a) instructs that a party, without awaiting a discovery request, must provide to other parties "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession . . . and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Later, "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing,"

6

Rule 26(e) requires that the party supplement or correct its disclosure. Fed. R. Civ. P. 26(e)(1). Failure to disclose or supplement under either provision may be grounds to bar a party's use of that information as evidence on a motion or at trial. Fed. R. Civ. P. 37(c)(1).

In their reply brief, Plaintiffs contend that their initial disclosures did "expressly identif[y] 'paychecks & pictures of timecards.'" (ECF No. 153, 2.) Indeed, a copy of Plaintiffs' disclosures attached to their response to Defendants' Motion for Summary Judgment states that "pictures of timecards" for five of the above-named plaintiffs "[were] in Plaintiffs' custody." (*See* ECF No. 101-1, 4.) According to Plaintiffs, the disclosure of the existence of the timecard photographs was not incomplete or incorrect; rather, "only their evidentiary weight became clearer when metadata later tied them to specific pay periods." (ECF No. 153, 2.) Plaintiffs argue that this change in the perceived weight of the photographs did not trigger a duty to supplement, and thus Defendants' argument under Rule 37(c) must fail. (*Id.*)

The Court agrees. Under Rule 26(a), Plaintiffs were obligated to provide either "a copy . . . or a description by category and location" of all documents in their possession that could be used to support Plaintiffs' claims. Fed. R. Civ. P. 26(a)(1)(A)(ii). Contrary to Defendants' assertion, Plaintiffs were not required to produce these files, so long as a sufficient description was provided. Plaintiffs did so provide by expressly disclosing possession of "pictures of timecards" belonging to named Plaintiffs Alfredo Teran, Eliberto Ambrosio Perez, Ricardo Teran, Patricio Martinez, and Ismael Guel. (ECF No. 101-1, 4.) Plaintiffs' discovery of the new metadata may have necessitated supplementation if they originally produced the photographs without this information. But as Plaintiffs note, Defendants declined to seek production of the timecard photographs, despite knowledge of their existence following Plaintiffs' initial disclosures. (*See*

ECF No. 153, 2.) Under these circumstances, the Court finds no grounds to exclude the timecard photographs from its spoliation analysis below.

## B.    Spoliation Analysis

Plaintiffs identify two bases for the Court to consider imposing additional sanctions. First, Plaintiffs offer the testimony of Trinidad Teran to rebut Defendants' assertion regarding when the destruction of the contested timecards began. Defendants maintain—in their response to Plaintiffs' First Motion for Sanctions and again here—that they began discarding and substituting physical timecards with payroll summary documents several months before they had notice of imminent litigation. (ECF No. 152, 5; *see also* ECF No. 75-1 (declaring that Defendants had followed this practice since at least the first quarter of 2022).) It was for Defendants' *continued* destruction of timecards after Plaintiffs requested a litigation hold in June 2022 that Judge Pham found sanctions were warranted. (ECF No. 120, 14.) Through the testimony of Trinidad Teran, Plaintiffs now attempt to refute Defendants' timeline. Teran writes that, based on his knowledge of the company's operations during his five years of employment, he "believes that any destruction of time cards occurred only after the filing of this lawsuit, and that such destruction was deliberate." (ECF No. 146-4, 1.) Plaintiffs seem to argue that this testimony supports imposing additional sanctions because "[Teran's] account supports a reasonable inference that Defendants began destroying timecards only after litigation commenced." (ECF No. 146, 4.) Thus, destruction of any timecards produced prior to the June 2022 litigation hold had to be a deliberate act.

The Court declines to impose sanctions on this basis. As Defendants note, Jamie and Jason Walker have consistently testified that Lawn Enforcement's destruction of timecards began pre-litigation, and prior to its knowledge of the litigation hold. (ECF No. 152, 5.) Plaintiffs offer a single declaration to rebut this testimony. Even though Teran claims familiarity with the

company's recordkeeping practices, his primary responsibly appears to be "overs[eeing] the company's work crews." (ECF No. 146-4, 1.) The Court finds his declaration to be insufficient to justify sanctions beyond those already imposed for Defendants' post-litigation spoliation. Moreover, Plaintiffs do not suggest that the adverse inference instruction previously determined to be appropriate by Magistrate Judge Pham is in any way inadequate. Pursuant to Judge Pham's Order, Plaintiffs are entitled to "a permissive jury instruction as to the timecards destroyed after the lawsuit began." (ECF No. 120, 16.) Whether all or only a portion of the timecards fall into this category is a question of fact best reserved for the jury.

Second, Plaintiffs renew their argument that Defendants, before having notice of this litigation, violated a regulatory duty to preserve the discarded timecards. (ECF No. 146, 8.) As explained above, Judge Pham denied in part Plaintiffs' First Motion for Sanctions because he could not determine, from the limited record at that time, whether Defendants violated a duty to preserve evidence before this litigation began. (*See* ECF No. 120, 12-13.)

In most circumstances, a party's obligation to preserve evidence arises "when a party should have known that the evidence may be relevant to future litigation." *Goodale v. Elavon, Inc.*, No. 23-5013, 2023 WL 9111441, at *4 (6th Cir. Dec. 12, 2023) (quoting *Beaven*, 622 F.3d at 553). Although the Sixth Circuit has yet to directly address the issue, several courts have recognized that "the failure to preserve evidence in violation of a regulation requiring its retention can give rise to an inference of spoliation, even if litigation involving the records is not reasonably foreseeable at the time the records are made." *Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:07-0979, 2010 WL 3342211, at *18 (M.D. Tenn. Aug. 24, 2010), *aff'd.*, 502 F. App'x 523 (6th Cir. 2012) (citing *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 109–10 (2nd Cir. 2001); *Latimore v. Citibank Fed. Savs. Bank*, 151 F.3d 712, 716 (7th Cir. 1998); *Favors v. Fisher*, 13

9

F.3d 1235, 1239 (8th Cir. 1994); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1419 (10th Cir. 1987)); (*see also* ECF No. 120, 12-13 (relying on *Johnson* for pre-litigation spoliation analysis)). Plaintiffs here cite to 29 C.F.R. Part 516, which requires that employers subject to the FLSA "preserve for a period of at least 2 years . . . all basic time and earning cards" for individual employees. 29 C.F.R. § 516.6(a)(1). Plaintiffs also assert that, pursuant to 29 C.F.R. § 516.1(a), "[t]hese records must be maintained on their original form." (ECF No. 146, 8.)

The Court finds as an initial matter that Defendants' payroll summary documents, if accurate, appear to comply with the relevant FLSA regulations. Contrary to Plaintiffs' assertion, Section 516.1(a) specifically instructs that "no particular order or form of records is prescribed by [Part 516]," so long as the records "contain[] the information and data required by specific sections." 29 C.F.R. § 516.1(a). The summaries produced by Defendants purport to contain the precise information required by Section 516.6(a)—namely the amounts of work accomplished and applicable wage rates per pay period for hourly employees.[3] (*See* ECF No. 67-2.)

To establish Defendants' breach of duty under the FLSA, Plaintiffs must therefore prove that Defendants' payroll summaries are not accurate substitutions for the destroyed timecards. Plaintiffs argue that they have done so, offering not only discrepancies between Defendants' summaries and Plaintiffs' preserved timecards, but also the testimony of former employees that overtime was common and routinely paid in cash at Lawn Enforcement. (*See* ECF No. 146, 7.) Taken together, Plaintiffs contend this evidence "show[s] a consistent pattern: in weeks exceeding forty hours, Defendants' payroll summaries underreported actual hours by omitting overtime

---

[3] Given their relevance to the instant motion, and in light of the parties' reference to the documents in their briefs, the Court has relied on the payroll summaries submitted as exhibits to Plaintiffs' First Motion for Sanctions. (ECF No. 67.)

entirely, while in weeks with fewer than forty hours, the summaries match the original[]
[timecards]." (*Id.*)

The Court notes that of the nine new timecards Plaintiffs offer in support of their motion,
only three—two for Patricio Martinez dated April 8 and May 13, 2022, respectively, and one for
Ismael Guel dated May 14, 2022—appear to reflect discrepancies from Defendants' payroll
summaries. (ECF Nos. 146, 5; 146-1; 146-2.) The timecards corresponding with the May 20, 2022,
pay date show ten and eighteen hours of overtime that are not recorded on Defendants' payroll
summaries, while Martinez's April timecard reflects only one unrecorded hour. (*Id.*; *see also* ECF
No. 67-2.) Although these discrepancies may be significant, the Court finds that reliance on the
timecard photographs would be misplaced at this point in the ligation. The Court agrees with
Defendants that some of the data recorded on the timecards is difficult to read, and despite the
metadata, the timecards themselves are undated. (ECF Nos. 146-1, 146-2; *see* ECF No. 152, 6.)
Also, all three conflicting timecards contain at least some handwritten entries.  This is in contrast
to the machine-generated timestamps that appear on these same timecards, and others, submitted
by Plaintiffs. (*See* ECF Nos. 146-1; 146-2; 146-3.)

Based on this, some evidence could exist that infers Defendants may have breached a pre-
litigation duty to preserve Plaintiffs' original timecards. Nevertheless, the Court finds this evidence
insufficient to warrant further sanctions. Despite Plaintiffs' additional submission, the record
remains limited to somewhat unreliable and conflicting evidence regarding Defendants' pre-
litigation recordkeeping practices. Even if Plaintiffs' submissions were reliable, photographs
suggesting discrepancies for just two pay periods, as opposed to dozens reported on Defendants'
payroll summaries, is insufficient to justify additional sanctions. Again, weighing this proof is a

responsibility best reserved for a jury. Plaintiffs' renewed request for sanctions is DENIED accordingly.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Renewed Motion for Spoliation Sanctions is **DENIED**.

**IT IS SO ORDERED** this 8th day of October, 2025.

*s/ John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE